# EXHIBIT "A"

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial and Class ArbitrationTribunal**

Re: 01-15-0005-8277

**In the Matter of the Arbitration between**

**Oumer Salim, individually and on behalf
of all others similarly situated**

**(Claimants)**

and

**JPay, Inc.**

**(Respondent)**

## OPINION

Respondent has moved to stay arbitration in the above-entitled matter pending a judicial decision either accepting jurisdiction over preliminary matters in this case or staying the judicial proceedings until this Panel has resolved the issues of its own jurisdiction relating to class or bilateral arbitration. Bruce W. Steckler, Esq. and Stefani Eisenstat, Esq. (Steckler, LLP, attorneys) appeared for Claimant, Velvel Freedman, Esq. (Boies, Schiller & Flexner, LLP, attorneys) and Jonathan A. Heller, Esq. (Law Offices of Jonathan A. Heller, P.A., attorneys) appeared for Respondent, and Jonathan Weed, Case Manager, supervised for AAA.

Claimant has urged that the Panel proceed with its consideration of the jurisdiction issue and will be pursuing its own application before the Court to have the Court's decision stayed pending resolution of the arbitration. On April 7, 2016, the Panel heard oral argument on this issue.

The Panel notes that Respondent has withdrawn any reliance on the December 16, 2015 version of its "Video Visitation Terms of Service" Agreement, which had been promulgated two weeks after Respondent received Claimant's Demand for Arbitration, to which the December 1, 2015 version of this Agreement had been attached. Respondent explained that there had been a clerical error resulting in the attachment of the later version of the Agreement to its Complaint filed in the Florida State Court, where it had sought a declaratory judgment. The parties are in agreement that the December 1, 2015 version of this Agreement (the "Agreement") controls in this case.

The arbitration clause in the Agreement reads as follows:

> 8. GOVERNING LAW.
>
> (a)     In the event of any dispute, claim or controversy among the parties arising out of or relating to this Terms of Service that involves a claim by the User for less than $10,000, exclusive of interest, arbitration fees and costs, shall be resolved by and through arbitration administered by the American Arbitration Association ("AAA") under its Arbitration Rules for the Resolution of Consumer Related Disputes. Any other dispute, claim or controversy among the parties arising out of or relating to this Terms of Service shall be resolved by and through arbitration administered by the AAA under its Commercial Arbitration Rules. The arbitrability of the dispute, claim or controversy shall likewise be determined in the arbitration. The arbitration proceeding shall be conducted in as expedited a manner as is then permitted by the rules of the American Arbitration Association. Both the foregoing Terms of Service of the parties to arbitrate any and all such disputes, claims and controversies, and the results, determinations, findings, judgments and/or awards rendered through any such arbitration shall be final and binding on the parties and may be specifically enforced by legal proceedings in any court of competent jurisdiction.
>
> (b)     The arbitrator(s) shall follow any applicable federal law and New York State law in rendering an award.

  (c) Unless otherwise agreed by the parties in writing, the arbitration hearings shall take place in Miami, Florida, USA.

  (d) The cost of the arbitration proceeding and any proceeding in court to confirm or vacate any arbitration award, as applicable, including without limitation, each party's attorneys' fees and costs, shall be borne by the unsuccessful party or, at the discretion of the arbitrator(s), may be prorated between the parties in such proportion as the arbitrator(s) determines to be equitable and shall be awarded as part of the arbitrator's award.

The Panel determined that although it could have called for a briefing of the dual questions of (1) its jurisdiction to hear the preliminary clause construction arguments on whether a class arbitration can proceed, as well as (2) the jurisdictional question whether the issue must be ceded to the Courts or whether it has contractually been placed before the Arbitrators, it decided to separate these questions. The Panel therefore directed the parties to brief and argue solely whether clause construction properly is an issue for the Arbitrators or the Courts to decide, not the merits of that issue. It informed counsel that if it determined that it has jurisdiction to construe the contract, it would then ask for full clause construction briefs and resolve whether or not this contract permits class arbitration.

The Panel understands that there is case law suggesting that the issue of contractual interpretation concerning class arbitration might inject itself into the jurisdictional question, but in the circumstances of this case, the Panel has determined that the issues can be easily separated. This being said, the Panel notes that it is not being critical of Respondent's delving into the class determination issues in its brief, as there certainly is relevant judicial authority for its having done so simultaneously with the threshold question of jurisdiction. *See Chesapeake*

*Appalachia LLC v. Scout Petroleum, LLC*, 809 F.3d 746 (3d Cir. 2016); *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 332 (3d Cir. 2014), cert. denied, 135 S. Ct. 1530 (2015); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d, 594, 599 (6th Cir. 2013). *Cf. Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 384 (11th Cir. 1995) (discussing the presumption against the Arbitrator's authority to decide arbitrability absent contrary agreement by the parties).

The foregoing decisions all implemented a principle favoring the judicial forum for resolving jurisdictional issues announced in *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 79, N. 4 (2010) (Stevens, J., dissenting, describing *First Options* establishing a "reverse presumption" in favor of the judicial forum for determining jurisdiction questions).

Here, the Agreement calls for the application of the Arbitration Rules of the American Arbitration Association (AAA). Smaller cases are to be resolved under the Rules Governing Consumer Related Disputes, and larger cases (over $10,000) are to be resolved under the Commercial Arbitration Rules. The Agreement further provides that the Arbitrators are to follow "any applicable federal law and New York State law in rendering an award."

The parties accepted the AAA Rules. Irrespective of whether this was a consumer related dispute or a commercial dispute, the AAA Rules provide that the Arbitrator will rule on his or her own jurisdiction (Consumer Dispute Rule R14, Commercial Rule R7). This can be read as the parties' agreement that this Panel, not a court, should pass on the jurisdictional issues.

4

Furthermore, the Supplementary Rules for Class Arbitration, effective October 8, 2003, provide that they "apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the Rules of the American Arbitration Association ('AAA') where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules." (Rule 1). These Supplementary Rules additionally provide that the arbitrator determines as a threshold matter "in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award')." (Rule 3, first paragraph). The Supplementary Rules, however, cannot be considered "to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." (Rule 3, final paragraph). Thus, by implication at least, by accepting the AAA Rules, the parties again are deemed to permit the arbitrator, rather than a court, to determine the issue of arbitrability.

Whether this incorporation by reference is enough to rebut the reverse presumption noted in the cases cited above has been the subject of some dispute. There is no question that in *Chesapeake Appalachia, supra,* the Court unequivocally found that this incorporation was insufficient to be a clear and unmistakable delegation of jurisdiction to the arbitrators to determine this threshold question. 809 F.3d at 753-54. The burden of rebutting this presumption was noted as an "onerous burden" not met by the mere adoption of the AAA Rules. *Id.* at 753, citing *Opalinski*, 761 F.3d at 355. As much as the Third Circuit opinion in *Chesapeake Appalachia* and the earlier opinion in *Opalinski* may take this position, these decisions certainly

5

are not binding upon this Panel, which was obligated under the Agreement to apply New York law, and by implication the law in the Second Circuit. Likewise, the *Reed* case and the earlier *Merrill Lynch* case from the Sixth and Eleventh Circuits may be considered persuasive but not binding authority. The Panel notes that the Eleventh Circuit has not definitively decided whether the availability of a class arbitration is a question of arbitrability and has stated specifically that it has not read Supreme Court cases as having decided this issue. *See S. Communications Servs., Inc. v. Thomas*, 720 F.3d 1352, 1359 (11th Cir. 2013).

Were these the only factors in determining whether the mandate of *First Options* was to be satisfied by the incorporation by reference of the AAA Rules to give this Panel authority to decide the threshold issue, this Panel might have some trepidation finding a mandate to decide jurisdictional questions. There is, however, a much stronger basis for arbitral jurisdiction in this case. In paragraph 8(a) of the parties' Agreement, they dictate that "[t]he arbitrability of the dispute, claim or controversy shall likewise be determined in the arbitration." We note that the word "likewise" is used, referring to the just stated adoption of the AAA Rules (with their express grant noted earlier of arbitral power to determine jurisdiction). By this language, the parties make it clear that arbitrability of any "dispute, claim or controversy" in the case is to be determined not by a court, but rather is to "be determined in the **arbitration**." (Emphasis added). As stated in earlier decisions and reiterated in *Chesapeake Appalachia,* arbitration is a "creature of contract," and the "arbitrator's authority is derived from an agreement to arbitrate." 809 F.3d at 757 (quoting *Opalinski* and earlier authority).

6

Thus, even if New York State or Second Circuit law were to follow the anti-arbitration and pro-judicial dictates of *Chesapeake Appalachia,* in this case there is clear and unmistakable delegation to the arbitrators of jurisdiction to decide whether class arbitration is permitted under the language of this Agreement.

As the Panel made clear to the parties at oral argument, a decision that the issue is to be arbitrated is not a decision that goes to the merits of the clause construction issue. That issue must be fully briefed, even though Respondent has apparently already taken this step. Claimant is well aware of the law set forth in the progress of United States Supreme Court opinions from the plurality decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) to *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (*2010*), to *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), to *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013), and to *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013). Claimant has the laboring oar of demonstrating a basis in the Agreement for class arbitration or some other collective remedy.

This Panel therefore determines that it has been granted jurisdiction to determine arbitrability, given the clear and unmistakable language of the parties' Agreement, not merely by the incorporation by reference of AAA Rules which also could have led to the same result. This Panel does not presume to decide this issue for a review in a parallel application to a Court, but merely notes that the Federal Arbitration Act (FAA) enjoins both courts and arbitrators to enforce arbitration agreements (9 U.S.C. §2). This Panel will, after proper briefing and argument, construe the parties' Agreement in accordance with applicable law and determine

whether it authorizes a class arbitration or whether the parties must proceed to resolve only Claimant's individual claim.

For the foregoing reasons, Respondent's motion to stay the arbitration proceeding until judicial resolution of the pending motions to stay the arbitration is hereby **DENIED**.

_/s/ William A. Dreier_
Hon. William A. Dreier, For the Panel

DATED this 13th day of April, 2016