**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 16-20121-CIV-GAYLES/TURNOFF

JPAY, INC.,

    Plaintiff,

v.

CYNTHIA KOBEL and SHALANDA HOUSTON,

    Defendants.
                                                    /

## ORDER

This cause came before the Court on Plaintiff's Cross Motion for Summary Judgment [ECF No. 19]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Court grants the Motion.

## BACKGROUND

JPay is a provider of money transfer services for individuals in correctional facilities and their family and friends. Claimants Cynthia Kobel and Shalanda Houston ("Claimants") utilized JPay's services to send money to inmates.

JPay's Terms of Service govern JPay and Claimaints' relationship and provide in relevant part:

(a) Any [] dispute, claim, or controversy among the parties arising out of or relating to this Agreement shall be resolved by and through arbitration administered by the AAA under its Commercial Arbitration Rules. The ability to arbitrate the dispute, claim, or controversy shall likewise be determined in the arbitration. The arbitration proceeding shall be conducted in as expedited a manner as is then permitted by the rules of the American Arbitration Association. Both the foregoing Agreement of the parties to arbitration any and all such disputes, claims and controversies, and the results, determinations, findings, judgments and /or awards rendered though any such arbitration shall be final and binding on the parties and may by specifically enforced by legal proceedings in any court of competent jurisdiction.

(the "Agreement") [ECF No. 19-2].[1]

---

1    JPay has since revised its Terms of Service to specifically exclude class arbitration. The Court does not find the revisions to be evidence that JPay previously agreed to class arbitration. Rather, JPay's revision appears to be an attempt to foreclosure any additional litigation over its Terms of Service.

On October 16, 2015, Claimants filed a demand for arbitration with the American Arbitration Association ("AAA") alleging that JPay engaged in unlawful conduct relating to its money transfer services. Claimants' demand was on behalf of themselves and a class consisting of "[a]ll natural persons who paid a fee to JPay for electronic money transfer services and who agreed to arbitrate their claims with JPay." [ECF No. 1-1].

In response, on December 11, 2015, JPay filed this action in the Eleventh Judicial Circuit in and for Miami Dade County seeking (i) a declaration that it has not consented to class arbitration; (ii) to stay the class arbitration; and (iii) to compel bilateral arbitration. Claimants removed the action to federal court. On February 16, 2016, Claimants moved to compel arbitration and stay the proceedings. On March 2, 2016, JPay opposed the Motion to Compel Arbitration and filed a Cross Motion for Summary Judgment [ECF No. 19].

On May 16, 2016, the Court denied in part Claimants' Motion to Compel arbitration, finding that the Court, and not the arbitrator, must decide whether the Agreement permits class arbitration. [ECF No. 28]. The Court based its finding on the fundamental difference between class and bilateral arbitration, holding that those differences were "of enough consequence that the determination of whether class arbitration is available is a substantive question for the Court to decide." [ECF No. 28 at pg. 5]. The Court also found that Claimants had not overcome their heavy burden to establish that the parties clearly and unmistakably agreed to have the arbitrator determine the availability of class arbitration. The Court reserved ruling on whether the Agreement provides for class arbitration, giving Claimants additional time to respond to JPay's Motion for Summary Judgment.

Before the Court ruled on JPay's Motion, Claimants appealed the Court's denial, in part, of their Motion to Compel Arbitration. The Court stayed these proceedings pending appeal. On January 23, 2017, the Eleventh Circuit dismissed Claimants' appeal for lack of jurisdiction, finding

2

the May 16, 2016 Order was not appealable. The Court reopened this matter and the parties fully briefed JPay's Motion for Summary Judgment. The only issue that remains before the Court is whether the Agreement provides for class arbitration.

## DISCUSSION

JPay moves for summary judgment on its declaratory relief claims, asking the Court to find, as a matter of law, that the Agreement does not permit class arbitration and that Claimants must pursue their claims against JPay in bilateral arbitration. In response, Claimants do not argue that there are material issues of fact precluding summary judgment. Rather, Claimants ask the Court to declare that the Agreement permits class arbitration.

**I. Standard of Review**

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network,*

*Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

### II. Gateway Issue – Is Class Arbitration Available under the Agreement?

The rights and obligations under an arbitration agreement flow solely from the parties' consent to "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Stolt-Nielson S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 683 (2010) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Accordingly, while the parties may agree to varied arbitration arrangements, they are only bound to arbitrate those disputes that they consented to arbitrate. *See Id.* at 684 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). The task for this Court, therefore, is to interpret the parties' agreement in a manner consistent with the parties' intent. *Id.*

"[A] party may not be compelled under the [Federal Arbitration Act] to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielson S.A*, 559 U.S. at 684 (emphasis in original). The Supreme Court has repeatedly held that the differences between class and bilateral proceedings are so fundamental that a court cannot simply infer from an agreement to arbitrate that the parties necessarily agreed to class arbitration. *Id.* at 685; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011). "[C]lass-action arbitration changes

4

the nature of the arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Stolt-Nielsen*, 559 U.S. at 685. Indeed, the differences between class and bilateral arbitration are significant. Class actions involve many disputes between hundreds, possibly thousands, of parties as opposed to one dispute in a bilateral proceeding. In addition, when a class is involved, the arbitrator's award might adjudicate the rights of absent class members. Finally, class arbitrations, like class litigation, have significant commercial ramifications, yet the scope of judicial review is extremely limited. *Id.* at 686-87. *See also AT&T Mobility*, 563 U.S. at 350 ("Arbitration is poorly suited to the higher stakes of class litigation."); *Dell Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 875 (4th Cir. 2016) (holding that the benefits and efficiencies of bilateral arbitration "are dramatically upended in class arbitration, which brings with it higher risks for defendants."); *Opalinski v. Robert Half Int'l*, 761 F.3d 326, 334 (3rd Cir. 2014) ("Traditional individual arbitration and class arbitration are so distinct that a choice between the two goes, we believe, to the very type of controversy to be resolved.").

### A.     The Agreement is Silent as to Class Arbitration

Parties are "generally free to structure their arbitration agreements as they see fit." *Stolt-Nielsen,* 559 U.S. at 683 (internal citations and quotations omitted). To be certain, parties may agree to permit, or, in most circumstances, prohibit class arbitration.[2] This Court's analysis is simple—and likely not required—where the agreement expressly includes or excludes class arbitration. The Agreement in this case, however, is silent as to class arbitration.

---

2     Claimants do not argue that the unavailability of class arbitration renders the agreement unconscionable. Even if they had, the Supreme Court has held that class arbitration waivers are not per se unconscionable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (holding that the FAA preempted California Supreme Court's decision that certain class action waivers were unconscionable under California law and that class action waiver in arbitration was permissible). *See also Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2306 (2013) (holding that courts are not permitted under the FAA to invalidate a class arbitration waiver on the ground that the plaintiff's cost of individually arbitrating a claim exceeds the potential recovery.)

The Third, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits have all held that "'silence' in an agreement regarding class arbitration generally indicates that it is not authorized by the agreement." *Opalinski v. Robert Half Int'l,* 677 F. App'x 738, 741 (3d Cir. 2017) (citing *Eshagh v. Terminix Int'l Co.*, 588 Fed.App'x. 703, 704 (9th Cir. 2014) (affirming the district court's grant of a motion to strike class allegations, where the arbitration agreement did not mention class arbitration); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett,* 734 F.3d 594, 599 (6th Cir. 2013) ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."); *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 643–44 (5th Cir. 2012) (finding that silence in an agreement does not "constitute[ ] consent to class arbitration" (internal quotation marks omitted)), *abrogated on other grounds by Oxford Health Plans LLC v. Sutter*, ––– U.S. ––––, 133 S. Ct. 2064, 186 L.Ed.2d 113 (2013); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728–29 (8th Cir. 2001) (holding that the district court did not err by compelling individual, rather than class, arbitration because the relevant agreements were silent as to class arbitration); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 275 (7th Cir. 1995) (stating "the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter"). Accordingly, the lack of a reference to class arbitration in the Agreement supports a construction that only contemplates bilateral arbitration.

Despite the Supreme Court's directive that an agreement to arbitrate cannot be presumed, Claimants contend that both the Supreme Court's decision in *Sutter* and the Eleventh Circuit's decision in *Southern Comm'n Serv., Inc. v. Thomas*, 720 F.3d 1352 (11th Cir. 2013) mandate that the Court find the Agreement permits class arbitrations. The Court disagrees. In *Sutter*, the parties agreed to have the arbitrator interpret their agreement to determine whether it authorized class arbitration. The arbitrator found that the agreement permitted class arbitration despite being silent as

6

to its availability. Upon review, the Supreme Court held that the arbitrator did not exceed his authority and, therefore, his decision would stand. *Sutter*, 133 S. Ct. at 2067. In so holding, the Supreme Court clearly stated that "[n]othing we say in this opinion should be taken to reflect any agreement with the arbitrator's contract interpretation, or any quarrel with Oxford's contrary reading." *Id.* at 2070 ("The arbitrator's construction holds, however good, bad, or ugly.") Indeed, the Supreme Court did not abrogate *Stolt-Nielsen*. Rather, it simply held that a court may not upset an arbitrator's interpretation of an agreement if the parties bargained for the arbitrator to construe the contract. *Id.*

Similarly, in *Southern Comm'n,* the parties agreed to have the arbitrator determine the availability of class arbitration based on an agreement. The agreement was silent as to the issue. The arbitrator interpreted the agreement to include class arbitration. *Southern Comm'n,* 720 F.3d at 1361. The Eleventh Circuit, in affirming the district court's denial of a motion to vacate the arbitrator's ruling, only addressed whether the arbitrator acted within his authority and not the propriety of his decision. *Id.* ("It is not for us to opine on whether or not that task was done badly, for '[i]t is the arbitrator's construction [of the contract] which was bargained for . . . .'") (quoting *Sutter,* 133 S. Ct. at 2070-71) (quoting *United Steelworks v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)).

The parties in this action did not agree to submit the question of class arbitrability to the arbitrator. Accordingly, Claimants' reliance on *Sutter* and *Southern Comm'n*. is misplaced.

  **B.**  **The Availability of Class Arbitration is not Implied**

Claimants argue that the Court may imply that class arbitration is available based on the breadth of the Agreement which provides that the parties must arbitrate "any dispute, claim, or controversy among the parties." [ECF No. 19-2]. Claimants' take an overly broad view of this

provision and the law. While the Supreme Court has provided that, in certain circumstances, the availability of class arbitration may be implied by the terms of the agreement, this "is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." *Stolt-Neilsen,* 559 U.S. at 685. *See also Opalinski*, 677 F. App'x at 742 ("On its face, the 'any dispute' language in Plaintiffs' agreements shows only the parties' general intent to arbitrate their disputes. We cannot infer an intent to arbitrate class claims on this basis.").

Claimants also suggest that because the Agreement incorporates the AAA rules – which provide for some class administration – it implies class arbitration. The Court disagrees. A reference to the AAA rules in an arbitration provision—without any additional language regarding class procedures—is not enough to find that the agreement contemplates class arbitration. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746 (3rd Cir. 2016); *Reed Elsevier,* 734 F.3d at 599-600.

Finally, Claimants ask the Court to rely on the arbitrator's interpretation of a similar JPay agreement. *See Salim v. JPay, Inc.*, No. 01-15-005-8277, (Oct. 30, 2016) (Hochberg, Harding, & Dreier, Arbitrators) ("*Salim* Ruling"). In *Salim*, another JPay customer initiated class arbitration against JPay for alleged unlawful conduct relating to its video chat service. JPay filed a declaratory relief action in this district. Less than eight days after this Court held that it must decide the gateway question of class arbitrability, the *Salim* court held that the arbitrator should make that determination. *See JPay, Inc. v. Salim*, Case No. 16-20107-DLG, May 24, 2016. The case proceeded to arbitration and the arbitrator construed the arbitration provision to permit class arbitration.[3] *See Salim* Ruling at 16-18. This Court respectfully disagrees with, and is not bound by, the *Salim* Ruling.

The Court interprets the Agreement to provide only for bilateral arbitration. The Court is mindful that its decision might have the unintended consequence of stifling a claimant's ability find counsel to represent them for small claims in arbitration. Indeed, Claimants' alleged losses in this action, while not frivolous, are small when compared to the types of awards seen in class litigation. Those concerns, however, are not a basis for adding a term to an arbitration agreement on which the parties did not clearly agree.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Cross Motion for Summary Judgment [ECF No. 19] is **GRANTED**.

2. The Court finds that the Agreement does not permit class arbitration. To the extent Claimants wish to litigate their claims against JPay, they must do so in bilateral arbitration in accordance with the terms of the agreement.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of July, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

3     The district court's order in *JPay v. Salim,* confirming the arbitrators' clause construction and denying JPay's Motion to Vacate, is on appeal before the Eleventh Circuit.