UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 16-20121-CIV-GAYLES

JPAY, INC.,

        Plaintiff,

v.

CYNTHIA KOBEL
and SHALANDA HOUSTON,

        Defendants.

_____/

## ORDER

       This cause came before the Court on JPay's Application to Partially Vacate Arbitration Award (the "Motion") [ECF No. 54]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is denied.

**I.      BACKGROUND**

**A.      The Original Arbitration Agreement**

       JPay, Inc. ("JPay") provides several services to friends and families of inmates in correctional institutions, including money transfers to inmates' accounts. Claimants Cynthia Kobel ("Kobel") and Shalanda Houston ("Houston") (collectively "Claimants") used JPay's services to send money to inmates. To do so, Claimants consented to JPay's Original Terms of Service (the "Original Terms") which provided in relevant part:

    **1. NOTICE AND CONSENT.** By using JPay's services, you agree to the terms and conditions of this Agreement . . . . We may amend this Agreement at any time by posting a revised version on our website. The revised version will be effective at the time we post it. By continuing to use JPay's service after any such change, you agree to be bound by the changed terms and conditions of this Agreement as of the effective date of such changes. . . .

### 13. GOVERNING LAW.

(a) . . . Any [] dispute, claim or controversy among the parties arising out of or relating to this Agreement shall be resolved by and through arbitration administered by the AAA under its Commercial Arbitration Rules. The ability to arbitrate the dispute, claim or controversy shall likewise be determined in the arbitration. The arbitration proceeding shall be conducted in as expedited a manner as is then permitted by the rules of the American Arbitration Association. Both the foregoing Agreement of the parties to arbitrate any and all such disputes, claims and controversies, and the results, determinations, findings, judgments and/or awards rendered though any such arbitration shall be final and binding on the parties and may by specifically enforced by legal proceedings in any court of competent jurisdiction.

[ECF No. 19-2].

On October 16, 2015, Claimants, in accordance with the Original Terms, filed a demand for arbitration with the American Arbitration Association ("AAA") alleging that JPay engaged in unlawful conduct relating to its money transfer services. Claimants' demand was on behalf of themselves and a class consisting of "[a]ll natural persons who paid a fee to JPay for electronic money transfer services and who agreed to arbitrate their claims with JPay. . . ." [ECF No. 1-1].

JPay then filed this action in the Eleventh Judicial Circuit in and for Miami Dade County, Florida, seeking (i) a declaration that it had not consented to class arbitration; (ii) to stay class arbitration; and (iii) to compel bilateral arbitration. [ECF No. 1-2]. Claimants removed the action to federal court. [ECF No. 1].

### B.    JPay Revises Its Terms

On December 16, 2015, two months after Claimants filed their demand for class arbitration, JPay revised the Original Terms (the "2015 Revised Terms"). [ECF No. 42-2]. The 2015 Revised Terms provided, in pertinent part, that (1) arbitration shall be administered by JAMS; (2) the parties shall arbitrate all disputes on an individual basis and waive the right to participate in a class action lawsuit; (3) the arbitrators have no authority to conduct class arbitration; and (4) "[t]he validity,

effect, and enforceability of the [] waiver class action lawsuit and class-wide arbitration" are to be determined by the courts and not by JAMS or any arbitrator. *Id.* JPay notified its customers via email of the 2015 Revised Terms. Houston again used JPay's services on May 3, 2016, August 15, 2017, and August 22, 2017, after the 2015 Revised Terms took effect, and therefore implicitly consented to the 2015 Revised Terms. [ECF No. 54-2 ¶ 6].

### C.   The Court and the Eleventh Circuit Review the Original Terms

On February 16, 2016, Claimants moved to compel class arbitration and stay the proceedings based on the Original Terms. [ECF No. 11]. JPay filed a Cross Motion for Summary Judgment, arguing that class arbitration was not available to Plaintiffs under the Original Terms. [ECF No. 19]. In response to JPay's Motion for Summary Judgment, Claimants referenced the 2015 Revised Terms as evidence that JPay could have explicitly excluded class arbitration from the Original Terms but chose not to. [ECF No. 42]. In its briefing on the Motion to Compel and Motion for Summary Judgment, JPay did not argue to this Court that the 2015 Revised Terms applied to Houston's claims.

On May 16, 2016, the Court denied, in part, Claimants' Motion to Compel arbitration, finding that the availability of class arbitration was a substantive question of arbitrability for the Court to decide and that Claimants had not overcome their burden to establish that the parties agreed to have an arbitrator make that determination.[1] [ECF No. 28]. The Court then granted JPay's Motion for Summary Judgment, finding that the Original Terms did not permit class arbitration. [ECF No. 44].

Claimants appealed to the Eleventh Circuit. [ECF No. 46]. JPay did not reference the 2015 Revised Terms in its briefing to the Eleventh Circuit but instead maintained its argument that the Original Terms did not delegate questions of arbitrability to the arbitrators or permit class arbitration.

On September 19, 2018, the Eleventh Circuit held that while the availability of class arbitration is a gateway question of arbitrability for courts to decide, in this case, "the language these parties employed in [the Original Terms] evinces the clearest possible intent to delegate questions of arbitrability to the arbitrator. . . . [and that the Court] lacked the power to decide whether or not the parties would arbitrate on a class basis." *JPay v. Kobel*, 904 F.3d 923, 939, 944 (11th Cir. 2018). On remand, the Court granted Claimant's Motion to Compel Arbitration and referred their demand for arbitration to the AAA. [ECF No. 51].

### D.     JPay Again Revises Its Terms

In February 2019, JPay made changes to the 2015 Revised Terms (the "2019 Revised Terms"). [ECF No. 54-4]. The 2019 Revised Terms continued to prohibit class arbitration and mandated that only a court could determine the "scope, validity, effect, and enforceability" of the class action waiver. *Id.* On April 26, 2019, Houston initiated a new transaction with JPay, explicitly consenting to the 2019 Revised Terms.[2]

### E.     The Arbitrators Construe the Original Terms

The arbitration proceedings continued. In its briefing before the Arbitrators on the availability of class-wide arbitration, JPay argued, for the first time, that the 2015 Revised Terms applied to Houston's claims and that, under those terms, the Arbitrators could not find that class arbitration was available.[3] The Arbitrators disagreed. In their Opinion, Order and Award on Clause Construction, issued on September 26, 2019, the Arbitrators found that (1) the operative agreement between the

---

1 Claimants filed an interlocutory appeal of the Court's Order on their Motion to Compel. The Eleventh Circuit dismissed the appeal for lack of jurisdiction. [ECF No. 37].

2 In December 2017, JPay revised its user interface, making it impossible for any customer to initiate a transaction without explicitly consenting to JPay's terms. Houston has since consented to the 2019 Revised Terms at least six more times. [ECF No. 54-2 ¶ 6].

3 JPay only provided the Arbitrators with the 2015 Revised Terms and not the 2019 Revised Terms. [ECF No. 57-1].

parties was the Original Terms and not the 2015 Revised Terms; (2) the Original Terms were not ambiguous; and (3) the Original Terms permitted class arbitration.  [ECF No. 54-1].

### F.     JPay Seeks Judicial Review

JPay now moves to partially vacate the arbitration award to the extent it applies to Houston and any other JPay customer who consented to either the 2015 Revised Terms or the 2019 Revised Terms. JPay argues that because the Revised Agreements expressly waive the right to class arbitration and require the courts to resolve any disputes about that waiver, the Arbitrators exceeded their authority in addressing the issue of class arbitration. The Court disagrees.

## II.   DISCUSSION

### A.     Standard of Review

"Judicial review of arbitration decisions is among the narrowest known to the law." *Gherardi v. Citigroup Global Markets Inc.*, ---F.3d---, 2020 WL 5553255, at *3 (11th Cir. Sep. 17, 2020) (internal quotations omitted). Indeed, "[t]here is a presumption under the FAA that arbitration awards will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible." *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1321 (11th Cir. 2010) (internal quotations omitted).

"Sections 10 and 11 of the FAA, 9 U.S.C. §§ 10, 11, provide the exclusive means by which a federal court may upset an arbitration panel's award." *White Springs Agricultural Chemicals, Inc. v. Glawson Investments Corp.*, 660 F.3d 1277, 1280 (11th Cir. 2011). Relevant here, § 10(a)(4) permits a court to vacate an arbitration award if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). "[F]ew awards are vacated [under section 10(a)(4)] because the scope of

the arbitrator's authority is so broad." *Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. & Infrastructure, Inc.*, 837 F.3d 1083, 1087 (11th Cir. 2016).

In reviewing whether the arbitration panel exceeded its authority, the Court is guided by two principles. *Wiregrass Metal*, 837 F.3d at 1087. "The first is that [the Court] must defer entirely to the arbitrator's interpretation of the underlying contract no matter how wrong we think that interpretation is." *Id.*; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671–72 (2010) ("It is not enough for petitioners to show that the panel committed an error—or even a serious error."). Therefore, the only question for the Court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 569 (2013). "In fact, under our current scheme, an arbitrator's actual reasoning is of such little importance to our review that it need not be explained—the decision itself is enough." *Gherardi*, 2020 WL 5553255, at *3.

The second principle guiding the Court's analysis is that "[v]acatur is permitted only when an arbitrator 'strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice.'" *Id.* (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). Some examples of when vacatur is appropriate include: "awarding relief on a statutory claim when the arbitration agreement allows only for arbitration of contractual claims; failing to give preclusive effect to an issue already (and properly) decided by a court; and forcing a party to submit to class arbitration without a contractual basis for concluding that the party agreed to it." *Id.* (internal citations omitted).  As set forth by these principles, a motion under § 10(a)(4) is not an appeal in the "traditional sense." *Id.*; *see also Sutter*, 569 U.S. at 568-69 ("If parties could take full-bore legal and evidentiary appeals, arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review process.") (internal quotations omitted). Rather,

the arbitrators' decision "can be challenged, not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate." *Gherardi,* 2020 WL 5553255, at *3 (internal quotations omitted).

## B.   The Arbitrators Did Not Exceed Their Power

JPay argues here, for the first time, that the 2015 Revised Terms and the 2019 Revised Terms retroactively apply to Houston's claims such that the Arbitrators had no authority to determine the availability of class arbitration.[4] However, JPay ignores the posture of this action. This Court cannot determine whether the 2015 or 2019 Revised Terms apply retroactively to Houston's claims as the Original Terms already delegated that authority to the Arbitrators. *See Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524, 529 (2019) ("[A] court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator, even if it appears to the court to be frivolous.").

The Eleventh Circuit has already held that, under the Original Terms, the Arbitrators had the power to determine the availability of class arbitration. *JPay*, 904 F.3d at 944. The Arbitrators did what they were tasked to do and interpreted the scope of the Original Terms, finding that class arbitration was available. Moreover, the Arbitrators considered the 2015 Revised Terms but found them inapplicable.[5] That JPay believes the Arbitrators made a legal or factual error is of no moment

---

4  In making this argument, JPay relies heavily on the Eleventh Circuit's decision in *Jones v. Waffle House*, 866 F.3d 1257 (11th Cir. 2017). JPay's reliance on *Jones* is misplaced. There, after initiating class litigation in court, the plaintiff signed an arbitration agreement with the defendant covering all past, present, or future claims and waiving class litigation. *Id.* at 1262. The defendant then moved to compel arbitration arguing that the newly signed arbitration agreement mandated that the arbitrators decide gateway questions of arbitrability. The district court denied the motion to compel, but the Eleventh Circuit reversed, holding that the arbitration agreement delegated questions of arbitrability, including the interpretation, applicability, enforceability, and formation of the agreement, to the arbitrators. *Id.* In a footnote, the Eleventh Circuit noted that because the agreement included past claims, it could be broad enough for the *arbitrators* to conclude that the arbitration provision included previously filed litigation. *Id.* at 1271 n1. Notably, the Eleventh Circuit left the issue of whether the arbitration agreement retroactively applied to the plaintiffs claims to the arbitrators. *Id.*
5  The arbitrators did not consider the 2019 Revised Terms because JPay never presented them to the arbitrators.

to the Court.[6] *See Gherardi*, 2020 WL 5553255, at *3 ("Arbitrators do not exceed their powers when they make errors, even a serious error.") (internal quotation omitted); *White Springs*, 660 F.3d at 1280 ("[A] panel's incorrect legal conclusion is not grounds for vacating or modifying the award.").

"[T]he law[] insist[s] that arbitration losers who resort to the courts continue to lose in all but the most unusual circumstances, of which this is not one." *Wiregrass Metal*, 837 F.3d at 1086. Accordingly, the Motion to Vacate shall be denied.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that JPay's Application to Partially Vacate Arbitration Award (the "Motion") [ECF No. 54] is DENIED.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of September 2020.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

6  Even if the Court could vacate the arbitration award based on an error, it is unclear whether the 2015 Revised Terms and 2019 Revised Terms apply retroactively. Moreover, even if the revisions could be applied retroactively, JPay may have waived those arguments by failing to raise them until now.